IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRUCE A. MCDONALD**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-0771-L** |
| | § | |
| **DALLAS COUNTY, DALLAS COUNTY SHERIFF'S DEPARTMENT, and LUPE VALDEZ**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendants' Motion for Summary Judgment, filed June 4, 2007; and (2) Defendants' Objections to Documents Contained in Appendix to Plaintiff's Brief in Support of Plaintiff's Response to Defendant[s'] Motion for Summary Judgment, filed November 28, 2007. After carefully considering the motion, briefing, record, objections, and applicable law, the court **denies** Defendants' Motion for Summary Judgment and **overrules in part** and **sustains in part** Defendants' Objections to Documents Contained in Appendix to Plaintiff's Brief in Support of Plaintiff's Response to Defendant[s'] Motion for Summary Judgment.

**I.    Procedural and Factual Background**

Plaintiff Bruce A. McDonald ("Plaintiff" or "McDonald") filed his Original Complaint on April 27, 2006 against Defendants Dallas County, Dallas County Sheriff's Department, and Lupe Valdez. Plaintiff asserts that Defendants were deliberately indifferent to his medical needs, and violated the Fifth, Eighth, and Fourteenth Amendments. Accordingly, he has brought a claim against them for these constitutional violations pursuant to 42 U.S.C. § 1983.

**Memorandum Opinion and Order - Page 1**

This motion for summary judgment was filed on June 4, 2007. The parties filed a stipulation on June 5, 2007, asking the court to "table" this motion until it ruled on a pending motion to dismiss. On June 21, 2007, the court converted the motion to dismiss into a motion for summary judgment and allowed Plaintiff an opportunity to respond. The converted motion for summary judgment, relating to Plaintiff's alleged failure to exhaust administrative remedies, was denied on October 5, 2007. Subsequently, this motion was briefed and is now ripe for decision. Defendants have also filed objections to certain evidence presented by Plaintiff. The court now sets forth the facts upon which it relies to resolve the summary judgment motion. In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

### A. Plaintiff's Injury and Care

McDonald's claims grow out of an injury he received while a pretrial detainee in the Dallas County Jail ("Jail"). Plaintiff was booked in the custody of the Jail on September 15, 2004. At that time, the University of Texas Medical Branch ("UTMB") provided on-site medical care to Dallas County inmate and pretrial detainees. During the period McDonald complains of, Sheriff Lupe Valdez ("Valdez") was the Dallas County Sheriff.

On April 27, 2005, McDonald was struck in his left eye by another inmate, and he informed the officer on duty but he did not receive any medical attention at that time. On April 28, 2005, Plaintiff again complained to the officer on duty that he needed medical attention, and he was taken to the nurse's station. The nurse noted hemorrhaging in his left eye and that she would ask a doctor to see Plaintiff on April 29, 2005. McDonald did not see a doctor until May 3, 2005, when he was seen by Dr. Holbrook, who diagnosed him with a possible scleral hemorrhage. Dr. Holbrook

**Memorandum Opinion and Order - Page 2**

recommended surgery, but Plaintiff was not scheduled to be taken to Parkland Hospital ("Parkland") to see an ophthalmologist.

Two days later, on May 5, 2005, Plaintiff, complaining of blindness, was seen by Dr. Holbrook again at the Jail. He was taken to the Parkland emergency room and diagnosed with a retinal tear. At that time, he was scheduled for a preoperative appointment on May 9, 2005, and surgery on May 10, 2005 or May 12, 2005. Plaintiff did not attend the May 9, 2005 appointment.

On May 13, 2005, complaining of feeling numb on the right side of his face since early morning, Plaintiff was seen again by Dr. Holbrook, who noted that Plaintiff's ophthalmology appointment at Parkland needed to be rescheduled ASAP. On May 16, 2005, Plaintiff again complained of eye pain to the Jail staff, but was told he could not go to Parkland until he had an appointment. McDonald was taken to Parkland for an appointment on May 19, 2005.

Plaintiff complained again about his eye on May 25, 2005 and on May 28, 2005. On the later date, McDonald was taken again to the nurse's station, but there was no mention of his need for surgery. He complained again on June 1, 2005, and saw nurses at the Jail. He was taken to Parkland, and scheduled to return the next day at noon. At that time, he was scheduled for surgery on June 14, 2005, forty-eight days after his injury. McDonald has not regained vision in his left eye.

### B. Evidence of Problems in the Jail

In late 2004, the Dallas County Commissioners hired an outside consultant, Health Management Associates ("HMA"), to conduct an investigation and provide a comprehensive review of the health services at the Jail. HMA hired Dr. Michael Puisis to conduct the investigation. As part of the investigation, Dr. Puisis looked into sick call and inmate requests for care. He determined that the Jail had multiple problems with the delivery of medical care to inmates

requesting sick care. He also noted that the Jail lacked adequate medical personnel and officers to handle inmate requests for medical care. Dr. Puisis also determined that the Jail had inadequate evaluations of inmates' medical needs. Dr. Puisis's report was presented to the County in February 2005.

Before Dr. Puisis's report, the previous Sheriff, Jim Bowles ("Bowles") and Dr. Bowers, the Medical Director at the Jail since December 16, 1993 and during the events underlying this case, had complained to the County Commissioners that they had concerns regarding the delivery of health care to inmates. Any problems that Dr. Bowers learned of were relayed up the chain of command to the County Commissioners Court. As Dr. Puisis's report showed, these problems continued after UTMB took over medical care at the Jail. One recurring problem was the lack of medical staffing at the Jail. Upon a request from Sheriff Bowles for additional funds, including those needed to solve the staff shortage, Bowles testified that a Dallas County Commissioner stated that it would be easier to defend lawsuits and pay out the occasional judgment than provide additional funding for the Jail.

## II. Defendants' Motion for Summary Judgment

### A. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a

motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

B.      Analysis

Defendants argue that Plaintiff has failed to raise a genuine issue of material fact with respect to his claim the he was denied his constitutional right to medical care by any individual for whom the County is responsible. Specifically, Defendants argue that there is no evidence that any particular employee of UTMB or the Dallas County Sheriff's Department had actual knowledge that Plaintiff was facing a substantial risk of serious injury or that with such knowledge any employee made a deliberate decision to not aid Plaintiff, with the intent that he was harmed. Defendants also argue that there is no genuine issue of material fact with respect to any policy or practice adopted by or maintained by the County that was the moving force behind any violation of Plaintiff's constitutional right to medical care.

McDonald responds that the facts support a claim for a constitutional violation under a theory of conditions of confinement or as an episodic act or omission claim. He contends that there is evidence establishing subjective deliberate indifference by County employees to his obvious and serious medical needs, objective deliberate indifference by Dallas County policymakers, and a policy that was the moving force behind the deprivation of his constitutional rights.

In their reply, Defendants argue that Plaintiff cannot argue that his claim is both a conditions of confinement and an episodic act or omission claim. Defendants also argue that Plaintiff must show the deliberate indifference of individual County employees before the court considers the issue of whether there was any County policy or practice that may have been a moving force in Plaintiff's alleged constitutional violation.

The court first addresses whether Plaintiff can plead both a conditions of confinement and an episodic act or omission claim. The court determines that Defendants are correct; Plaintiff cannot allege both types of claims. *Flores v. County of Hardeman, Texas*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 655 (5th Cir. 1996)). Because Plaintiff's claims arise from the actions of the Jail with respect to the treatment of his eye injury, the court determines that his claim is an episodic act or omission claim as he complains of "a particular act or omission of one or more officials." *Id*. (citing *Hare*, 74 F.3d at 645).

"Deliberate indifference" in prison cases occurs when "an official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The same standard is also used to measure jail officials' liability to pretrial detainees. *Hare*, 74 F.3d at 643.

Deliberate indifference requires a higher degree of fault than negligence, or even gross negligence. *Id*. at 645. Negligent inaction by jail personnel does not rise to the level of deliberate indifference. *Id*. "[T]he constitutional standard of conduct must step up from negligence – that [is] it must be more than mere or even gross negligence." *Id*. As the court further stated:

> To act with deliberate indifference, a state actor must know [] of and disregard [] an excessive risk to [the victim's] health or safety. The state actor's actual knowledge is critical to the inquiry. A state actor's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference.

*McClendon v. City of Columbia*, 305 F.3d 314, 426 n.8 (5th Cir. 2002) (en banc) (internal quotations and citations omitted). To establish County liability, Plaintiff must demonstrate that the Jail personnel "acted with subjective deliberate indifference" *and* that their actions resulted from a

County "policy or custom adopted or maintained with objective deliberate indifference to [Plaintiff's] constitutional rights." *Olabisiomtosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *see also Hare*, 74 F.3d at 649 n.4.

While the court acknowledges that the standard is high, the court concludes that Plaintiff has produced enough evidence to create a genuine issue of material fact as to whether Jail employees acted with deliberate indifference towards him. The facts establish that Plaintiff repeatedly asked for medical care after his left eye was injured. Injured on April 27, 2005, McDonald did not see a doctor until May 5, 2005, more than a week later. A fact issue exists with respect to a critical issue – the reason Plaintiff was not taken to Parkland for a preoperative appointment on May 9, 2005 – an action that resulted in his surgery being delayed and may have lead to Plaintiff losing the eyesight in his left eye. Jail medical personnel were on notice that Plaintiff had a retinal tear as early as May 2, 2005; *however, forty-eight days elapsed between Plaintiff's injury and his surgery*. A reasonable jury could conclude that these facts, taken in the light most favorable to McDonald, could rise to the level of deliberate indifference. Accordingly, the court determines that Plaintiff has raised a genuine issue of material fact with respect to Jail employees' subjective deliberate indifference.

Next the court considers whether Plaintiff has raised a fact issue with respect to the County's liability. A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 594 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior

or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [county] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [county] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *see also Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct was "the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County*, 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett*, 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [county] policy with respect to the action ordered . . . . The official must also be responsible for establishing final governmental policy respecting such activity before the [county] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency, or board. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390).

The type and quantum of proof a plaintiff must offer to establish deliberate indifference varies, however, with the type of inaction alleged and with the identity of the wrongdoer. When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established. *See, e.g.*, *Pembaur*, 475 U.S. at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). When the challenge relates to a custom of behavior among non-policymaking employees, which may be contrary to official policy, the plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate "at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098, *cert. dism'd*, 526 U.S. 1083 (1999) (internal quotations and citations

omitted). Isolated violations are not persistent, often repeated constant violations that constitute custom or policy. *Bennett*, 728 F.2d at 768 n.3. In such "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Id*. at 768.

In light of this standard, the court determines that Plaintiff has raised a genuine issue of material fact as to whether Dallas County had a policy or custom that was a moving force behind his alleged constitutional violation. Plaintiff has provided evidence that supports a finding that there was a policy of inadequate medical care and a lack of medical personnel in the Jail. The report of Dr. Puisis, a report that was actually ordered by the Dallas County Commissioners, demonstrates not only that the County Commissioners knew that the medical care of inmates and pretrial detainees needed further investigation, but the report put the Commissioners on notice that the Jail lacked adequate medical personnel to deal with inmates' medical problems. This report is consistent with the complaints from Sheriff Bowles and Dr. Bowers, the individuals responsible for the operation of the Jail and the delivery of health care to Jail inmates, respectively. Plaintiff points to evidence that at least one County Commissioner acknowledged that the lack of medical care would lead to constitutional violations and stated that it was better to pay an occasional judgment than to increase the Jail budget. This attitude reflects a callous indifference to the health of Jail inmates and is probative of deliberate indifference. The court determines that there is a genuine issue of material fact as to whether this policy was a moving force behind Plaintiff's alleged constitutional violation. For these reasons, the court determines that McDonald has raised a genuine issue of material fact

with respect to his section 1983 claim, and the court therefore **denies** Defendants' motion for summary judgment.

## III. Defendants' Evidentiary Objections

Defendants object to the following exhibits submitted by Plaintiff in opposition to the motion for summary judgment: the deposition of Sheriff Jim Bowles; the deposition of Michael Puisis; the Health Management Associates Report; the U.S. Department of Justice letter; the affidavit and report of Tom Gora; the affidavit and report of Judith T. Feigon. Defendants have made multiple objections to each exhibit. The court has reviewed the exhibits, objections, and response.

Defendants object to Sheriff Bowles's deposition insofar as it includes a conversation between him and County Commissioner Jackson, arguing that this testimony is irrelevant and does not bind the County. The court **overrules** Defendants' objections and determines that Bowles's testimony on this point is relevant to whether the County was on notice regarding the alleged lack of medical care and personnel at the Jail and is probative with respect to the issue of deliberate indifference. Defendants object to Dr. Puisis's deposition testimony and the Health Management Associates Report as irrelevant, conclusory, and containing hearsay. The court **overrules** Defendants' objections and determines that the deposition and report are relevant even though they do not specifically relate to Plaintiff's injury. Dr. Puisis spent eight days at the Jail while investigating his report, and he has personal knowledge of Jail conditions. The testimony and documents are probative with respect to the County's knowledge of the lack of adequate medical care available to inmates and pretrial detainees and the issue of deliberate indifference. The court **sustains** Defendants' objections to the U.S. Department of Justice letter because the report was completed after the incident that is the basis of this lawsuit. Finally, the court **overrules**

Defendants' objections to Plaintiff's expert reports. The court finds these reports relevant, and notes that Defendants never moved to strike either expert based on their qualifications. Moreover, even if the court were to strike these expert reports, it would not change its ruling on Defendants' motion for summary judgment.

**IV.  Conclusion**

For the foregoing reasons, the court determines that a genuine issue of material fact exists as to whether Defendants had a policy or custom of denying medical care to inmates and pretrial detainees at the Jail. The court **denies** Defendants' Motion for Summary Judgment and **overrules in part** and **sustains in part** as stated herein Defendants' Objections to Documents Contained in Appendix to Plaintiff's Brief in Support of Plaintiff's Response to Defendant[s'] Motion for Summary Judgment.

**It is so ordered** this 31st day of March, 2008.

Sam A. Lindsay
United States District Judge